IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HERMENEGILDO RAMOS, ) ) Plaintiff, ) ) v. ) ) MICHAEL J. ASTRUE, ) Commissioner of Social Security, ) ) Defendant. ) ) | No. 09 C 5727 Magistrate Judge Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This is an action brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying plaintiff Hermenegildo Ramos's claim for Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Ramos's motion for summary judgment [Doc. No. 13] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 17] is granted.

## BACKGROUND

### I. PROCEDURAL HISTORY

Ramos originally applied for Disability Insurance Benefits on August 20, 2003, alleging disability since October 15, 2002. (R. 159-61.) The application was denied on November 20, 2003 and upon reconsideration on April 20, 2004. (R. 99-113.) Ramos filed a timely request for a hearing by an Administrative Law Judge

("ALJ"), which was held on September 8, 2005. (R. 53.) Ramos personally appeared and testified at the hearing and was represented by a non-attorney. (*Id.*) Two medical experts also testified; a vocational expert appeared at the hearing but did not testify. (*Id.*) At the hearing, the psychological medical expert testified that the evidence in the record was not sufficient for him to form opinions regarding Ramos's mental impairments. (*Id.*) The ALJ therefore continued the hearing in order for Ramos to undergo a forensic, consultative, psychological examination and to allow Ramos's representative to submit any additional treatment records pertinent to his claim. (*Id.*) On May 23, 2006, the hearing was reconvened, and Ramos and his representative appeared; additional documents were submitted into evidence; Ramos and two medical experts testified and a vocational expert appeared; and the ALJ granted Ramos's representative's motion to amend the alleged disability onset date to April 13, 2005, when the claimant reached age fifty. (R. 53-54.)

On June 13, 2006, the ALJ denied Ramos's claim for benefits and found him not disabled under the Social Security Act. (R. 61.) Following Ramos's timely request for review of the decision, on February 22, 2007, the Social Security Administration Appeals Council accepted jurisdiction and remanded the case back to the ALJ for a new hearing for reasons discussed below. (R. 95-97.)

The ALJ held a supplemental hearing on October 25, 2007. (R. 23.) Ramos again personally appeared at the hearing and was represented by a non-attorney. (*Id.*) Two new medical experts testified, as did a vocational expert. (*Id.*) After the hearing, the ALJ held the record open to allow Ramos's representative to submit

2

additional information and a brief documenting the inaccuracy of the ALJ's earlier credibility finding. (R. 24.) No information was submitted before Ramos discharged his non-attorney representative from further representation in the matter on April 18, 2008. (*Id.*)

On December 9, 2008, the ALJ again denied Ramos's claim for benefits. (R. 31.) After retaining legal counsel, Ramos filed a timely request for review of the decision, and an unfavorable decision upholding most of the ALJ's findings was issued by the Appeals Council on July 17, 2009. (R. 11-13.) This decision was the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND

### A. Background

Ramos was born on April 13, 1955, and at the time of the October 25, 2007 ALJ hearing, he was fifty-two years old. (R. 159.) He is six feet six inches tall and weighs 175 pounds. (R. 288.) He lives with his wife and two children. (R. 186, 271.) Ramos testified that he has a fourth-grade education[1] and can understand some English but cannot write. (R. 433.) Ramos was most recently employed as a mechanic's assistant at Nitrex, Inc., where he aided factory-machine mechanics by giving them needed tools or parts, from 1995 until he was laid off on October 15,

---

[1] Ramos's representative stated that he entered the sixth grade but only finished the fifth. (R. 439-40.)

2002. (R. 173-74, 511.) In 1994, he was a metal painter at Radiac Abrasives, Inc., and in the years prior to that, Ramos worked at several jobs, including as a busboy at That Steak Joynt, Inc. and at a company called Metal Creations Inc. (R. 170-73.) Ramos claims disability beginning April 13, 2005, because of pain due to a right leg injury suffered in a vehicle accident in 1998, diabetes, and depression. (R. 76, 103.)

### B. Testimony and Medical Evidence

#### 1. *Ramos's Testimony*

Ramos testified that he first came to the United States in the early 1970s and became a naturalized citizen in 1999. (R. 57, 482.) Ramos claimed that he has pain in his right ankle when it is cold, and it is difficult for him to sleep and walk. (R. 430.) He can walk approximately three or four blocks at a time and stand in one place for no more than fifteen minutes. (R. 431.) Due to his right shoulder pain, Ramos cannot lift heavy objects, and he cannot raise it for very long. (*Id.*) He experiences depression not only from his pain, but from other problems in his life. (R. 432.) He understands some English but cannot write. (R. 433.) During his employment at Nitrex, he stood during the day and lifted as much as fifty to seventy pounds at a time. (R. 433, 512.)

#### 2. *Medical Evidence*

##### a. Medical Evaluations

On October 22, 2003, Dr. Roopa Karri conducted a DDS consultative examination. (R. 270-73.) Dr. Karri noted Ramos's history of injury and his claims that he has pain all over his leg, which is worse in the winter. (R. 270.) He has

4

difficulty walking, and his right ankle tends to swell up with activity. (*Id.*) Ramos also complained of right shoulder pain that radiated to his right hand. (*Id.*) Ramos stated that he uses a cane in the winter and can climb stairs with difficulty. (R. 271.) During Dr. Karri's examination, Ramos was able to get on and off the exam table and could walk fifty feet without support, but he limped on his right leg. (R. 272.) He could not walk on his heels and toes or squat. (*Id.*) His range of motion of his shoulders, elbows, wrists, and knees was normal, and the straight leg raise test was negative. (*Id.*) The range of motion of the right hip was 85 degrees flexion and 20 degrees extension. (*Id.*) The range of motion of the ankles was 10 degrees right dorsiflexion, 10 degrees plantar flexion. (*Id.*) Ramos reported tenderness in the right ankle and right hip. (*Id.*)

A consultative Residual Functional Capacity ("RFC") assessment was completed by Dr. Frank Jimenez on November 12, 2003 and reviewed by Dr. Henry Bernet on March 31, 2004. (R. 281-88.) Dr. Jimenez concluded that Ramos had the RFC to lift twenty pounds occasionally and ten pounds frequently; stand/walk and sit about six hours in an eight-hour workday; with unlimited pushing and pulling; limited to never climbing a ladder/rope/scaffold, occasionally climbing stairs, occasionally stooping and kneeling, and frequently balancing, crouching, and crawling. (R. 282-83.) All of the exertional and postural limitations were based upon objective findings of Ramos's decreased range of motion in his right leg as well as tenderness on the right ankle and hip. (R. 282-83, 288.) Dr. Jimenez found no manipulative, visual, communicative, or environmental limitations. (R. 284-85.) Dr.

5

Jimenez concluded that Ramos was restricted to work at the light exertion level. (R. 288.)

On January 26, 2006, Dr. James Elmes performed an orthopedic consultative examination on Ramos. (R. 307-18.) Ramos presented with complaints of pain in his right hip, shoulder, ankle, and knee. (R. 307.) He stated that the current treatment regimen included heat, massage, aspirin, and rest. (R. 308.) Dr. Elmes stated that Ramos had decreased strength in his right leg with distance walking, used a handrail on stairs, and occasionally has balance difficulties after fifteen minutes of walking due to weakness and pain. (*Id.*) X-rays taken by Dr. Elmes revealed healed fractures of the right hip and shoulder with satisfactory or good alignments. (R. 309.) The screws in his hip were in place and intact, and the cartilage space was well maintained. (*Id.*) His knee x-ray showed satisfactory general alignment, with some early degenerative changes to the right knee joint. (*Id.*)

Ramos had a normal heel-to-toe gait pattern, and without the use of the cane, he leaned more to the right when walking. (R. 310.) Ramos was able to walk fifty feet unassisted in the office and stated that he can walk three blocks outside. (*Id.*) He noted no measurable atrophy of the extremities and no increased swelling of the right ankle compared to the left. (*Id.*)

The range of motion of Ramos's joints was normal except for both knees, which had a maximum flexion to 142 degrees, with normal being 150 degrees; his right shoulder, with had a maximum side arm elevation to 145, with normal being 150 degrees; and his right ankle, which showed decreased eversion of 15 degrees,

6

with normal being 20 degrees, and inversion of 20 degrees, with normal being 30 degrees. (R. 310-11, 313.) Ramos's back also revealed reduced extension, lateral bending, and forward flexion. (R. 311, 313.) Dr. Elmes also noted that three out of six tests were inappropriate, but "there is no definite evidence for symptom magnification." (R. 311.) Dr. Elmes concluded that Ramos had the following physical abilities, which would put him at a sedentary-level RFC: lifting/carrying twenty pounds frequently and twenty-four pounds occasionally; standing/walking at least two hours in an eight-hour workday; with periodic alternation of sitting and standing; twenty-four pounds maximum pushing and pulling; occasional climbing ramps or stairs, never climbing ladders, ropes, or scaffolds; occasional balancing and stooping; and never kneeling, crouching, or crawling. (R. 316.) Ramos was limited to reaching only occasionally but had no limitations on handling, fingering, or feeling; and he should have limited exposure to temperature extremes, vibration, humidity, and hazards but unlimited exposure to noise, dust, and fumes, odors, chemicals, or gases. (R. 317-18.)

Dr. Carlos Pedrera, who was Ramos's primary care physician, completed a consultative examination on June 2, 2007. (R. 304-06.) Dr. Pedrera limited Ramos to a sedentary RFC, with specific limitations of lifting less than ten pounds occasionally; standing/walking at least two hours and sitting less than six hours in an eight-hour workday; limited pushing/pulling in both upper and lower extremities; no climbing, balancing, kneeling, crouching, crawling, or stooping; and occasional reaching, handling, and fingering. (*Id.*) Dr. Pedrera supported his

7

conclusions on Ramos's history of fractures and his complaints of pain of persistent pain and numbness in his right leg. (R. 305.)

### b. Medical Expert's Testimony

At the May 23, 2006 ALJ hearing, Dr. McKenna testified that there is no objective evidence supporting Ramos's complaints of progressive pain in his right leg. (R. 408.) He maintained that the pins in Ramos's leg could lead to some aching, discomfort, and swelling, but that it would be a "nuisance," rather than totally disabling. (R. 409-10.) Dr. McKenna noted that every professional who examined x-rays of the leg were pleased with the placement of the hardware and the healing of the leg, and there is no objective basis for particular pain associated with the hardware. (R. 410.) He commented that, despite Ramos's claim of chronic pain, he was not being treated with narcotics or pain agents. (*Id.*) With regard to Dr. Elmes's evaluation, Dr. McKenna noted that three out of six tests showed an inappropriate response, suggesting that Ramos's pain responses were amplified. (R. 411-12.) He found nothing in the record that would allow him to definitively conclude that Ramos would be limited to less than six hours of walking and standing. (R. 412.) Dr. McKenna also stated that there was no explanation for Ramos's complaints of shoulder pain. (R. 408.) He ultimately concluded that Ramos would be limited to a medium RFC. (R. 412.)

At the October 25, 2007 hearing, Dr. Newman testified that there was no evidence in the record of residual problems that would explain Ramos's pain years after his 1998 accident. (R. 446.) He saw no indication of arthritis or swelling of the

8

hip, knee, or ankle or any other clinical findings that would suggest an impairment requiring the use of a cane or limiting Ramos's ability to be on his feet. (R. 446-47, 449-53.)

Dr. Newman noted that Dr. Elmes's 2006 finding of restricted ankle motion was inconsistent with the treating physician's conclusion that there was no restriction a year after the accident. (R. 448.) Dr. Newman concluded that Ramos had an RFC of light physical exertion, with the ability to be on his feet for six hours a day, with squatting, kneeling, and crawling limited to less than a third of a day, and lifting limited to twenty pounds occasionally and ten pounds frequently. (R. 453-54.)

### 3. *Vocational Expert's Testimony*

Vocational Expert Cheryl Hoiseth testified that Ramos's previous job as an assistant painter was at the light, semi-skilled level. (R. 514-15.) She stated that, given Ramos's RFC, he would be able to perform that job as it is generally performed in the national economy. (R. 515-16.)

### C. **ALJ Decision**

In his June 13, 2006 decision, the ALJ found that Ramos met the disability insured status requirements of the Social Security Act on his alleged disability onset date of April 13, 2005, and through the date of the decision. (R. 56.) At Step 1 of the analysis, the ALJ found that Ramos had not engaged in any substantial gainful activity at any material time, and at Step 2, he found that Ramos suffered

9

permanent physical impairments[2] that are "severe" as defined by the regulations as well as a mental impairment of affective disorder. (R. 56.) The ALJ further found, at Step 3, that none of Ramos's impairments, alone or in combination, met or equaled any in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. 404.1520(d), 404.1525, and 404.1526. (R. 56.)

The ALJ's decision found Ramos's testimony about the severity of his pain not to be credible based upon what he considered to be contradictory statements Ramos made regarding his understanding of the English language. (R. 57.) Ramos claimed at the hearing that he was unable to communicate in English. (*Id.*) Citing a portion of the U.S. Immigration and Naturalization Act that describes the literacy requirements of citizenship, the ALJ concluded that Ramos's status as a naturalized citizen impeached his veracity about his ability to speak English. (*Id.*) The ALJ therefore credited only the complaints of pain that were independently corroborated by the objective medical evidence. (*Id.*)

Based on the testimony of medical experts who evaluated his medical records and Ramos's failure to receive the type of treatment that would be expected for someone who is totally disabled, the ALJ concluded at Step 4 that Ramos retained the RFC for medium work, which would allow him to perform his past work as a

---

[2] The ALJ's decision does not list which of Ramos's physical impairments he found to be severe but refers to Exhibits 1B and 3B, which are the denials of his claim. Those exhibits describe Ramos's right hip, leg, and ankle fracture; shoulder injury and back problems; vision problems; diabetes; and some insomnia/depression. (R. 103, 111.)

painter. (R. 59-60.) The ALJ therefore determined that Ramos was not disabled within the meaning of the Act at any relevant time. (R. 60.)

On February 13, 2007, the Appeals Council vacated the ALJ's June 13, 2006 decision and remanded the case back to the ALJ to allow him to: (1) adequately evaluate treating, examining, and non-examining source opinions in the record; (2) resolve the discrepancy between Ramos's claim that he cannot read or speak English and the ALJ's finding that Ramos is literate in the English language based upon the fact that he is a naturalized citizen; and (3) assess Ramos's residual functional capacity on a function-by-function basis. (R. 95-96.)

After a supplemental hearing on October 25, 2007, the ALJ issued a second decision on December 9, 2008. (R. 23-31.) This decision incorporated by reference the discussion of Steps 1-3 included in the June 13, 2006 decision. (R. 26-27.) In determining that Ramos retained an RFC at the medium level of exertion, the ALJ relied upon expert testimony that the objective record did not support a limitation to the sedentary level of activity. (R. 27-28.) Specifically, the ALJ noted the lack of evidence of arthritis at the fracture sites, and the absence of swelling or warmth on clinical examination. (R. 28.)

The ALJ discounted the weight of Dr. Pedrera's report because there was no evidence in the record about the number of times Dr. Pedrera examined Ramos and over what period of time. (R. 29.) In addition, nothing in Dr. Pedrera's records suggested an aggressive treatment plan which would be expected with pain and limitations of the intensity alleged by Ramos, nor do the records show that Dr.

Pedrera followed through with a referral to an orthopedic surgeon to relieve Ramos's symptoms. (*Id.*) Finally, the ALJ found that Dr. Pedrera's report was not entitled to controlling weight because it was not consistent with the other medical evidence in the record. (R. 29-30.)

With regard to Dr. Elmes's opinion that Ramos was limited to a sedentary activity level, the ALJ noted Dr. Elmes's findings that certain of Ramos's behaviors on clinical examination were inappropriate. (R. 30.) The ALJ was more persuaded by the opinions of testifying experts who had the benefit of the entire record and were subject to cross-examination. (*Id.*) Having found that Ramos retained an RFC at a medium level, the ALJ again concluded at Step 4 that Ramos would be able to perform his past employment as an assistant painter, which required light exertion. (R. 27, 30-31.)

The Appeals Council granted Ramos's request for review of the ALJ's second decision. The Appeals Council's decision agreed with most of the ALJ's findings; however, it concluded that the record demonstrated Ramos had the residual functional capacity to perform only light work, as opposed to medium work as found by the ALJ. (R. 11-12.) Nevertheless, the Appeals Council ultimately concluded that even with the limitation on light work, Ramos could perform his past work as an assistant painter and was thus not disabled. (R. 13.)

### III. DISCUSSION

#### A. ALJ Legal Standard

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42. U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4) (2008).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

13

### B. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are support by substantial evidence or based upon legal error. *Clifford v. Apfel,* 227 F.3d. 863, 869 (7th Cir. 2000); *Stevenson v. Chater,* 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ "must at least minimally articulate the analysis for the evidence with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Murphy v. Astrue*, 498 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any

conclusions, and must adequately articulate his analysis so that we can follow his reasoning.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### C. <u>Analysis</u>

Ramos argues that the Commissioner's decision was in error for two reasons: (1) the ALJ improperly analyzed his credibility; and (2) the ALJ improperly discounted Dr. Elmes's consultative examination because the testifying expert never examined the claimant.[3]

#### 1. *<u>Credibility</u>*

Ramos claims that the ALJ improperly found him not to be credible based upon his alleged inability to communicate in English, finding that it was not consistent with the fact that he was able to pass the citizenship examination. Ramos states that his ability to communicate at the level required to take a citizenship test does not mean that he has the ability to communicate in English in

---

[3] The Court agrees with the Commissioner that Ramos's conclusory, sentence-long third argument–that because he was unrepresented from April to December 2008, the ALJ should have sent a "show cause" letter before closing the record–is not sufficiently developed and is therefore waived. *See Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1002 n. 1 (7th Cir.2001) (perfunctory and undeveloped arguments are waived).

15

a work setting, and it was error to use that issue to find him not credible. The Commissioner responds that Ramos's English literacy is a non-issue because it is a non-exertional limitation that is only relevant at Step 5, and the ALJ decided this case at Step 4, based on Ramos's ability to perform his past work as a painter. The Commissioner is correct that Ramos's literacy is not, by itself, relevant to a positive answer at Step 4. However, the ALJ's literacy discussion is relevant as it relates to the ALJ's credibility finding.

An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, an ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez* ex rel. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887-88).

The credibility finding in the ALJ's original decision placed a tremendous amount of weight on what he perceived to be an inconsistency between Ramos's ability to pass his citizenship examination and his stated inability to communicate in English. Indeed, this conclusory, unsupported assertion was part of the reason the Appeals Council remanded the case back to the ALJ. But the ALJ's second decision did not rely on Ramos's literacy level in concluding that Ramos had a

16

greater RFC than his subjective complaints would indicate.[4] The ALJ considered Ramos's activities of daily living, the lack of objective clinical findings supporting a disabling level of pain, and the suggestion of exaggeration in tests administered by Dr. Elmes. (R. 30.) Ramos does not challenge or even discuss these bases for the credibility finding. The Court therefore concludes that there was sufficient evidence in the record to support the ALJ's finding that Ramos does not suffer from the level of pain he alleges.

### 2. *Dr. Elmes's Report*

Ramos next argues that the ALJ did not give sufficient weight to the functional limitations in Dr. Elmes's report, which would limit him to the sedentary level of exertion. Ramos faults the ALJ for crediting the testimony of a non-examining medical expert and for concluding that Ramos magnified his symptoms during the examination. The Commissioner responds that there is substantial evidence in the record contradicting Dr. Elmes's opinion that Ramos was limited to walking or standing only two hours per day. As the ALJ noted, Dr. Elmes reported that Ramos had inappropriate responses to three of six tests. Moreover, his exertional limitations were contradicted by the medical experts' testimony as well as the report completed and reviewed by Drs. Jimenez and Bernet.

---

[4] The ALJ expressly found that Ramos's ability to speak English was "immaterial to this decision," but then gratuitously stated that Ramos could have exaggerated his inability to communicate at a clinical examination in the same way he could have exaggerated his physical limitations. (R. 31.) The ALJ also thought it "interesting" that two examining physicians did not note that Ramos was only Spanish-speaking. (*Id.*) It is unclear why the ALJ felt it was necessary to include this discussion in the decision, as it did not relate to his conclusions.

Ramos implies that Dr. Elmes's report should have had some controlling weight in making the RFC decision. However, Dr. Elmes was not a treating source under the Regulations, and therefore his opinion need not have been accorded controlling weight. *See White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005) ("'Nontreating source means a physician . . . who has examined you but does not have, or did not have, an ongoing treatment relationship with you.'") (quoting 20 C.F.R. § 404.1502). Furthermore, this Court may not reweigh evidence or resolve conflicts in evidence, *Skinner*, 478 F.3d at 841, and the ALJ's decision not to accept Dr. Elmes's conclusions is adequately supported in the record. Dr. Elmes himself indicated that, while he found no definitive evidence of symptom magnification, there were inappropriate findings noted. In addition, the ALJ considered the testimony of the various testifying experts who could find no objective clinical bases for a sedentary RFC.

## CONCLUSION

For the foregoing reasons, Ramos's motion for summary judgment [Doc. No. 13] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 17] is granted.

SO ORDERED.    ENTERED:

    *Maria Valdez*

DATE:   January 27, 2012    _____
    **HON. MARIA VALDEZ**
    **United States Magistrate Judge**